PER CURIAM.
Appellant-respondents are the City of Miami Beach, its council and planning board (hereinafter referred to respectively as “city”, “council”, and “board”). Appellants seek review of an adverse final judgment and the issuance of a peremptory writ of mandamus against them and an order denying them leave to file a late return to an alternative writ of mandamus. The two plenary and two interlocutory appeals have been consolidated for all appellate purposes.
Appellees are the owners of a parcel of land within the “city” previously zoned P. U.D.-2 (Planned Unit Development). This classification allowed the construction of a *77 maximum of fifty residential units per acre. Prior to development, however, § 6-3(K) of the “city’s” zoning ordinances required the appellees to submit and gain approval for a site plan[1] by the Planning and Zoning Department through the “board”, after a public hearing with due notice to those interested and the general public.[2] The appellees submitted their site plan to the “board” and after a public hearing the “board” disapproved of the plan suggesting changes to be made therein. Thereafter, the “council” requested the “board” to convene a public hearing and recommend a possible change, amendment or boundary extension in order to change the P.U.D.-2 classification of the property to SR-1 (single family residence). Pursuant to the “city’s” zoning ordinances[3] a public hearing was held before the “board” *78 after due notice and the “board” recommended the change to the “council”, provided a buffer .zone was acquired by the “city” through its condemnation power. The “council”, thereupon, held its own public. hearing on March 9, 1972, and the proposal failed of the %ths votes necessary for approval. Over one month later, on April 19, 1972, the “council” voted to rezone the appellees’ property from its P. U.D.-2 classification to SR-1 without notice, consideration by the “board” or public hearings.
On June 7, 1972, appellees submitted their revised site plan for development of their P.U.D. property to the “board”. The “board” denied appellees’ request for a public hearing on the plan due to the action of the “council” in classifying the property as SR-1 on April 19, 1972.
Appellees filed their petition for an alternative writ of mandamus on July 28, 1972, which was granted directing the appellants to receive the site plan and call a public hearing on same and to recommend action on the plan. In the alternative, the appellants were to show cause for noncompliance with the alternative writ. At the time scheduled for the return on the writ, the appellants moved to quash. That motion was denied and the court directed the appellants to file their return. The appellants stated their present inability to answer. Hearing was set on September 5, 1972, for formal entry of the order denying the motion to quash, and to consider the final judgment and peremptory writ of mandamus. At that time, appellants moved to file a late return to the alternative writ with a proposed return attached. In denying appellants’ motion to file the late return, the court noted that, “even though-the time for filing a return has long passed, the Court- has examined the tendered return attached to said motion and has heard arguments of counsel upon the sufficiency thereof, and it is the opinion of the Court that the return tendered and presented as a part of said motion is insufficient in law and in fact.” Final judgment was entered in appellees’ favor and a peremptory writ of mandamus issued directing the “city”, “council” and “board” to receive the site plan and to comply with the procedures for the consideration of same as set out in the ordinances aforementioned. It is to these various actions of the trial court that the appellants direct our scrutiny.
The pivotal question presented by this appeal is whether the “city” has effectively and legally changed the classification of appellees’ property from P.U.D.-2 to SR-1. If the change of classification by the “city” was proper than the refusal of the plan “board” to consider appellees’ revised site plan was proper since such a procedure is inappropriate to property zoned SR-1 without provision for the use contemplated by appellees. However, if the act of the “city” in re-classifying the property was not valid and effectual, then the dictates of the ordinance places a mandatory duty upon the “board” to set the site plan for public hearing and review.[4]
The “city’s” action in requesting the planning “board” to consider such a change is permissive under § 16-1 of the zoning ordinance. See note 3, supra. However, once the request is made the dictates of the ordinance calling for petition, notice and public hearings are mandatory. Thus, once the “city” has decided to consider such a change, amendment or supplement of the district boundaries, it must *79 submit the same to the plan “board” for its recommendations and report given after the “board” has held a noticed public hearing on the change. The “council” may then adopt such a change only after the “council” holds a public hearing on the matter, with due notice, and the approving vote of %ths of the “council”. These steps were followed once in the case sub judice. However, the change was rejected by the “council”. At that point, § 16-3 of the Ordinances came into effect providing:
“When a proposed change in district boundaries has been acted upon by the City Council and disapproved or failed of passage, such proposed change, in the same or substantially similar form, shall not be reconsidered by the City Council for a period of at least, one year following the date of such action.” [Emphasis supplied.]
Contrary to this provision of the ordinance, the “council” reconsidered the change a month after the original change failed of passage. Moreover, the reconsideration was not prefaced by the set procedures provided for by the “city’s” own ordinances. We have carefully considered the arguments of appellants attempting to show that their actions were not governed by the foregoing ordinances and the arguments in the alternative attempting to show substantial compliance therewith and we have found these arguments to be unpersuasive. We agree with that philosophy expressed by the Fourth District Court of Appeal in the case of Florida Tallow Corp. v. Bryan, Fla.App.1970, 237 So.2d 308, wherein the court noted: (237 So.2d at 310)
“(5) The Town in wielding its zoning authority under Ordinance No. 5-63-1 finds itself working with a double-bitted axe which cuts both ways. The Town cannot exercise the authority to change zoning granted by one provision of . the comprehensive zoning plan, and yet completely ignore the obligatory requirements of the same ordinance as they pertain to the method and procedure for making zoning changes.”
We are, therefore, of the opinion that the “city’s” attempt to change the classification of appellee’s property from P.U.D.-2 to SR-1 was a nullity and the property retains its former status. As such, it is the clear legal duty of the “city”, “council” and “board” to process the revised site plan of appellees for the use of said property in accordance with the provisions of § 7-1 of the zoning ordinances of the “city”. We have considered appellants’ remaining points and have found them to be without merit.
Accordingly, the final judgment, peremptory writ of mandamus and the order denying appellants the right to file a late return to the alternative writ are hereby affirmed.
Affirmed.

. § 6-3 (K) provides:
“K. SITE PLAN APPROVAL
“1. When required a site plan shall be submitted, meeting the requirements of Section 14, and other information as may be required by the specific project.
“2. Procedures: Approval of site plan shall be in accordance with Section 7-1, D, as applied to conditional uses.”

. § 7-1 of the “city’s” zoning ordinances provides, in part:
“C. SITE PLAN REQUIRED. Each application for approval of a conditional use shall be accompanied by a site plan meeting the requirements of Section 14, and such other information as may be required for a determination of the nature of the proposed use and its effect on the Comprehensive Development Plan, the neighborhood, and surrounding properties.
“D. PROCEDURES — CONDITIONAL USES. Applications for approval of a conditional use shall be submitted to the Planning and Zoning Department, which shall review the application and site plan for sufficiency under the requirements of these regulations, and forward necessary copies of the application to the Clerk of the City Council for notation in the record of Council business. The Clerk shall forward two copies to the Planning Board for study, for holding of a public hearing, and for recommendation and report to the City Council. Within a reasonable time of receipt of the application, the Planning Board shall “hold a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least 15 days’ notice of the time and place of such hearing shall be posted on the property in question in accord with the requirements of Section 16. Within 30 days of the public hearing, the Planning Board shall submit a report and recommendations to the City Council. The report may contain additional conditions which should be imposed by the City Council in approving the conditional use. The City Council may establish additional conditions for an approval by a simple majority vote, but shall require a vote of five-sevenths of all members of the Council to overrule a Planning Board recommendation for disapproval or to eliminate or substantially change any conditions attached to an approval by the Planning Board.” [Emphasis supplied.]

.§ 16-1 provides, inter alia:
“A. The City Council may, from time to time, amend, supplement, or change, by ordinance the boundaries of the districts or the regulations herein established after having held a public hearing. following at least fifteen (15) days notice of time, place and object of such hearing published in an official paper, or a paper of general circulation in said City of Miami Beach, amend, supplement, change, modify or repeal the regulations and boundaries herein established, provided, however, that no amendment shall become effective except by the favorable vote of five-sevenths (%ths) of all the members of the City Council. And, provided further, that if the hearing is to be on the question of a change in the boundaries herein established, then such fifteen (15) days notice shall be given by mail to the owners of record of land lying within 375 feet of the land, the boundaries of which are supposed to be changed.
“B. Before taking any action on any proposed amendment, supplement, or change, the City Council shall submit the same to the Planning Board for its recommendations and report.
“C. The Planning Board shall, within sixty (60) days, hold a public hearing thereon and submit its report and recommendations on the proposal to the City Council within thirty (30) days from the date of the public hearing. Notice of public hearings before the Board shall be given by publishing the time, place, and nature of the hearing *78 not more than SO nor less than 15 days before the hearing, at least once in one or more newspapers of general circulation in the City, and the Board shall cause the date, time, place, and nature of the hearing to be posted conspicuously on the property, in accordance with the rules of the Board. The Planning Board may swear witnesses on their own volition or on request of any party to a hearing and may compel appearance of witnesses.”

. As provided for in § 7-1 of the ordinances. See note 2, supra.